# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

LISA M. VINCENT
*Plaintiff,*

v.

SUSAN BYSIEWICZ AND NED LAMONT,
*Defendants.*

No. 3:20-cv-1196 (VAB)

## RULING AND ORDER ON PRELIMINARY INJUCTION

Lisa M. Vincent ("Plaintiff") sued Susan Bysiewicz, Lieutenant Governor of the State of

Connecticut, and Ned Lamont, the Governor of the State of Connecticut, (together,

"Defendants") over Executive Order 7NNN (the "Executive Order"), which requires the wearing

of face coverings in public spaces to prevent the spread of the novel coronavirus known as

COVID-19.[1] Compl., ECF No. 1 (Aug. 17, 2020).

Ms. Vincent seeks injunctive relief, alleging that the Executive Order "depriv[ed] [her] of

liberty and privacy." *Id.* Ms. Vincent filed an *ex parte* motion for a temporary restraining order,

Ex Parte Mot. for TRO, ECF No. 3 (Aug. 17, 2020) ("Mot. for TRO"), supported by an affidavit,

*id.* at 3-5, and memorandum of law, Mem. in Supp. of Ex Parte Mot. for TRO, ECF No. 16

(Sept. 4, 2020) ("Pl.'s Mem."). The Court subsequently denied Ms. Vincent's *ex parte* motion

---

[1] As of today, over seven million people in the United States are known to have contracted COVID-19 and well over 200,000 people in this country have died from the disease. *See Coronavirus Disease 2019 (COVID-19): Cases in the U.S.*, CENTERS FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited Oct. 15, 2020). The State of Connecticut has had over 61,000 cases and 4,537 deaths. Although still increasing, the reported cases in Connecticut are much lower than most states. *See Connecticut COVID-19 Data Trackers*, CT.GOV, https://portal.ct.gov/Coronavirus/COVID-19-Data-Tracker (last visited Oct. 15, 2020).

for a temporary restraining order without prejudice to further review of a preliminary injunction after oral argument. Order Denying TRO, ECF No. 17 (Sept. 10, 2020).

For the reasons that follow, Ms. Vincent's request for injunctive relief is **DENIED**.

## I.     BACKGROUND

### A.  Factual Allegations

.       Ms. Vincent is a licensed attorney and resident of Torrington, Connecticut. Mot. for TRO at 3 ¶ 1–2.

Ms. Vincent alleges that she has "a mental health disability in the form of phobia and associated panic disorder." Compl. ¶ 4. Ms. Vincent alleges that "[her] disability interferes with [her] ability to receive any type of medical care or treatment, but is especially severe with medical care associated with [her] face." Mot. for TRO at 3 ¶ 4. She alleges that "[her] disability interferes with [her] ability to have anything on or near [her] face or to have anything touch [her] that [she] ha[s] not expressly chosen and consented to." *Id.* at 3 ¶ 5. She further alleges that "[her] disability renders [her] unable to maintain mental and emotional stability when faced with medical care or unwelcome interference with [her] personal body and space, especially surrounding [her] face." *Id.* at 3 ¶ 6.

"Notwithstanding that [she] ha[s] a mental health condition which has required emergency treatment on occasion," *Id.* at 3 ¶ 8, she alleges that she "do[es] not believe in medicine, do[es] not carry health insurance, do[es] not take any medication, do[es] not have a physician, and do[es] not have any willingness to pursue medical treatment to access [her] liberty." Compl. ¶ 5. Allegedly, "[t]he only medical professional who has engaged with [Ms. Vincent] in the past five years is an eye surgeon." Mot. for TRO at 3 ¶ 10.

"Since March 10, 2020," Ms. Vincent alleges that she "ha[s] been an active participant in

protests, rallies, and political activities of resistance to Governor Lamont's actions in response to the pandemic." Compl. ¶ 7.

Ms. Vincent alleges that "Governor Lamont has issued a total of 66 Executive Orders to suspend or modify statutes and to take other actions which he has declared as 'necessary to protect public health and safety and to mitigate the effects of the COVID-19 pandemic.'" *Id.* ¶ 9 (internal quotation not attributed).

On April 17, 2020, Governor Lamont issued Executive Order 7BB, which required the wearing of face coverings in public when unable to socially distance. *Id.* ¶ 10; Defs.' Mem. at 4. Executive Order 7BB included an exception for individuals with a health condition that made the wearing of facial coverings unsafe. Compl. ¶ 11; Defs.' Mem. at 4. Any individual using this exception was not required to produce medical documentation to verify the health condition. *Id.*

Ms. Vincent alleges that she "immediately recognized that [she] would be unable to wear any type of face-covering and that attempting to wear such a face-covering would cause serious harm to [her] mental and emotional well-being, and lead to the physical problems that develop when [she] ha[s] a panic attack." Compl. ¶ 12.

Ms. Vincent alleges that she "understood, and . . . experienced, that the mask rule would be enforced in public buildings including courts." *Id.* ¶ 14. She alleges that "[o]ther citizens whom [she] encountered in public did not appear to recognize or appreciate that any person was exempt from the requirement." *Id.* ¶ 15. And that she was allegedly "harassed, questioned, intimidated, and evicted from various public places between April 17, 2020 and June 12, 2020 . . . caus[ing] [her] significant mental and emotional distress and anxiety." *Id.* ¶ 16. This allegedly "led [her] to significantly reduce [her] participation in social and community life." *Id.*

On June 12, 2020, Ms. Vincent allegedly "filed a Citizen's Complaint with the United

States Department of Justice." *Id.* ¶ 17.

Ms. Vincent alleges that "[b]etween June 22, 2020 and August 14, 2020, [she] continued to engage in [her] normal activities without wearing a mask, relying on the medical exception which [she] needed to claim repeatedly in both public and private businesses." *Id.* ¶ 18. She alleges that she "continued to file regular complaints with multiple businesses as [she] was routinely interfered with and harassed." *Id.*

Ms. Vincent alleges that "between April 17 and August 14, 2020," Governor Lamont "engaged in repeated public speech wherein he encouraged all good people to confront, challenge, and engage with those person who were not wearing a mask." *Id.* ¶ 19. She further alleges that during that time, Governor Lamont "also engaged in repeated public speech criticizing those persons who ha[d] engaged in political protests in response to his shutdown of the Connecticut economy." *Id.* ¶ 20.

Ms. Vincent generally alleges that "the characteristics of COVID-19 that were feared in early 2020 were not actually real," *id.* ¶ 21, and that the wearing of "masks in non-medical settings was not actually effective at controlling spread of [COVID-19]," *id.* ¶ 22.

Ms. Vincent alleges that "[n]otwithstanding the factual success of the control of COVID-19 in Connecticut, Governor Lamont has continued to incite panic and overreaction and has continued to issue Executive Orders without any legislative involvement." *Id.* ¶ 24.

On August 2, 2020, Ms. Vincent alleges that she "attended 'Connecticut Freedom Rally! No New Normal!'" *Id.* ¶ 25. Allegedly, "[t]his political rally took place on the Capitol lawn in Hartford, Connecticut . . . [with] [a]pproximately 200 people . . . in attendance," featuring "multiple conservative-minded political speakers, [the] playing of the National Anthem, and many Trump flags waving." *Id.* Ms. Vincent alleges that she observed people wearing masks and

socially distancing until it began to rain, at which point participants took cover on the Capitol steps. *Id.* ¶ 26.

On August 3, 2020, Ms. Vincent alleges that Governor Lamont "held a joint news conference with Dr. Anthony Fauci." *Id.* ¶ 27. Ms. Vincent generally alleges that during this news conference, Governor Lamont and Dr. Fauci discussed the rally at the Capitol and increasing accountability for those who do not follow social distancing. *Id.* ¶ 31.

Ms. Vincent alleges that "[o]n August 11, 2020 . . . Governor Lamont stated, ' . . . I think people are beginning to abuse [the medical exception] privilege. So from here on out, just bring your doctor's permission with you." *Id.* ¶ 33.

On August 14, 2020, Lieutenant Governor Bysiewicz and Governor Lamont issued Executive Order 7NNN, which allegedly repealed Executive Order 7BB and requires the wearing of face coverings in public when social distancing is not possible. Compl. ¶ 34; Defs.' Mem. at 6–7. The Executive Order provides an exception for individuals with documentation that the wearing of a face covering would harm their health or safety due to a medical condition. *Id.*

Allegedly, Lieutenant Governor Bysiewicz stated that:

> [P]ublic health officials and municipal officials have reported that some people who refuse to wear a mask have falsely claimed a medical reason for doing so, and that some organizations philosophically opposed to these scientifically proven health public health protections have urged their members or those attending protests to claim a medical exemption because Executive Order 7BB does not require documentation.

*Id.* ¶ 36.

Ms. Vincent alleges that there is no support for the propositions that "people with disabilities who are unable to wear a mask are lying or otherwise behaving badly," *id.* ¶ 37, nor

is there a "basis to support a claim that people with opposing philosophical views are lying and claiming a health condition that they do not have," *id.* ¶ 38.

Ms. Vincent alleges that "[t]he current known facts about COVID-19 infection and transmission in Connecticut are evidence that the pandemic is under control and that the control can be maintained by continuing with successful interventions" and "[t]here is no evidence that additional or more rigid interventions are needed for the public health." *Id.* ¶ 40.

Ms. Vincent alleges that the Executive Order "was actually enacted to punish the political speech that took place on August 2, 2020 and to quell any public opposition to the draconian restrictions on normal life that this administration has imposed in the interest of public health." *Id.* ¶ 42.

Ms. Vincent alleges that "[she] do[es] not have any documentation nor any ability to get such without engaging in health care against [her] will, and even if [she] were willing, there is no health care provider who has enough information about [her] health condition to opine on [her] disability status." Mot. for TRO at 4 ¶ 19.

Ms. Vincent alleges that "[she] ha[s] an immediate need to have normalized, equal access to public buildings to satisfy [her] professional obligations." *Id.* at 4 ¶ 21. Allegedly, she "currently represent[s] forty-two (42) different clients in courts and administrative agencies throughout Connecticut . . . [s]pecifically, [she] ha[s] open cases in seven (7) different juvenile courts, three (3) Superior Courts, and three (3) probate courts." *Id.* ¶ 22. Ms. Vincent alleges that "[i]f [she is] unable to be in any public space without a doctor's note, [she] will be prevented from completing necessary services for [her] clients." *Id.* ¶ 23. Allegedly, "[u]pon information and belief, [she] will be denied entry to [her] local grocery store, bank and pharmacy, rendering [her] unable to complete [her] necessary business without a

doctor's note confirming [her] eligibility to claim a health exception to the mask rule." *Id.* at 5 ¶ 24.

### B. Procedural History

On August 17, 2020, Ms. Vincent filed a Complaint against Lieutenant Governor Bysiewicz and Governor Lamont, seeking injunctive and declaratory relief from Executive Order 7NNN. Compl.

On the same day, Ms. Vincent also filed an *ex parte* motion for a temporary restraining order. Mot. for TRO. Attached to the motion was an affidavit from Ms. Vincent detailing her alleged medical condition. Mot. for TRO.

On August 25, 2020, the Court held a telephonic status conference, Min. Entry, ECF No. 13 (Aug. 25, 2020) ("Status Conf."), and ordered oral argument on the motion for September 29, 2020, Order, ECF No. 14 (Aug. 25, 2020). During this conference, Ms. Vincent requested relief from the requirements of the Executive Order in advance of the oral argument. Status Conf. The Court directed Ms. Vincent to file additional support for her request for relief before oral argument on her motion. *Id.*

On September 4, 2020, Ms. Vincent filed a memorandum in further support of her *ex parte* motion. Pl.'s Mem.

On September 10, 2020, the Court denied Ms. Vincent's *ex parte* motion for temporary restraining order and request for immediate relief from the Executive Order. Order Denying TRO. The Court noted, however, that the denial was "without prejudice to further review" at the oral argument on the motion scheduled for September 29, 2020. *Id.*

On September 11, 2020, Defendants filed a first objection to Plaintiff's motion for temporary restraining order. Def.'s Mem. in Opp'n. to Pl.'s Mot. for TRO, ECF No. 18 (Sept. 11,

2020) ("Defs.' Mem.").

On September 29, 2020, the Court held a hearing on the preliminary injunction motion as well as oral argument on that motion. Min. Entry, ECF No. 19 (Oct. 5, 2020).

During the hearing, Ms. Vincent testified further about her underlying condition.[2] She testified that the juvenile courts in which she practices are open and holding in person proceedings. Ms. Vincent testified that she hired a contract attorney for a fee of $700 a week to handle her in-person appearances in juvenile and criminal courts. Ms. Vincent testified that, since August 25, 2020, her contract attorney has appeared on her behalf three times and submitted a family court filing. Ms. Vincent testified that in-person proceedings were increasing.

Ms. Vincent testified that she is a problem solver, who has learned to manage her mental health. She testified that she has had panic attacks and anxiety related to healthcare since her early childhood. She testified that she experienced extreme distress related to seeing doctors.

Ms. Vincent testified that as a young adult she had substantial dental problems. Ms. Vincent testified that to receive dental care, she required heavy sedation before and during the procedures. Ms. Vincent testified that she has a panic disorder related to dentists, and that she has required general anesthesia to endure other dental procedures.

Ms. Vincent testified that her aversion to healthcare has worsened and is no longer limited to dentists or needles. Ms. Vincent testified that she does not believe in healthcare and is unable to receive healthcare without suicidal thoughts. Ms. Vincent testified that she recognizes these feelings can appear irrational and unreasonable, but that her panic diminishes her intellectual capacity.

Ms. Vincent testified that she has had issues with her eyesight. She testified that she had

---

[2] The following paragraphs summarize the testimony provided by Ms. Vincent during the hearing held on September 29, 2020. Min Entry, ECF No. 19.

glaucoma and had lost 80% of her sight in her left eye. Ms. Vincent testified that the treatment of her glaucoma required eye drops, but her mental illness prevented her from using the eye drops. Ms. Vincent testified that as a problem solver, she was able to work with an eye surgent to avoid the use of eye drops. She testified that she had to be drugged for many weeks before having surgery on both of her eyes. Ms. Vincent testified that before her eye surgery, she contemplated suicide because of the nerves caused by the surgery.

Ms. Vincent testified that although she generally keeps her mental health private, she disclosed her disorders to the bar.

Ms. Vincent testified that when she heard about Executive Order 7BB, she was disabled by anxiety and panic. She testified that she would rather die than wear a mask. Ms. Vincent testified she did not wear a mask and would tell people that she had a health exception. Ms. Vincent testified that she felt angry and had a hard time getting out of bed. She testified that she filed a request for help regarding Executive Order 7BB with the Department of Justice.

Ms. Vincent testified that she does not take medication and does not value medication.

Ms. Vincent testified that she is a politically active person and attended an event on August 2, 2020 for the Libertarian Party. Ms. Vincent testified that it does not matter than she does not believe in masks because she cannot wear a mask. Ms. Vincent testified that she does not deserve to be punished under the Executive Order.

Ms. Vincent testified that she does not have a mechanism to solve her problem under the Executive Order. She testified that due to her generalized fear of medicine, she cannot call a psychiatrist. Ms. Vincent testified that she has suicidal thoughts related to contacting a psychiatrist. Ms. Vincent testified that if the Executive Order is not repealed, she cannot stay in Connecticut.

Ms. Vincent testified that she is not willing to seek out a written medical exception from a health care provider because going to a doctor would require treatment. Ms. Vincent testified that she would die if she had to take medication.

Ms. Vincent testified that she would lose everything if she had to leave the state due to the Executive Order. She testified that this is not a self-imposed harm, but that the Executive Order discriminated against her and that this lawsuit was a desperate act to save herself from harm.

## II.    STANDARD OF REVIEW

Preliminary injunctive relief is an "extraordinary remedy" and not a matter of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction under Federal Rule of Civil Procedure 65, a movant "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *New York Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (quoting *Winter*, 555 U.S. at 20); *see also Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005).

When deciding a motion for preliminary injunction, "a court may consider the entire record including affidavits and other hearsay evidence." *Johnson v. Newport Lorillard*, No. 01 Civ. 9587 (SAS), 2003 WL 169797, at *1 (S.D.N.Y. Jan. 23, 2003). The moving party, however, must also make a "clear or substantial" showing of a likelihood of success if the injunction sought will alter, rather than maintain the status quo. *See Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996).

In the Second Circuit, "[t]he same standards used to review a request for a preliminary

injunction govern consideration of an application for a temporary restraining order." *Stagliano v. Herkimer Cent. Sch. Dist.*, 151 F. Supp. 3d 264, 272 (N.D.N.Y. 2015) (citing *Local 1814 Int'l Longshoreman's Ass'n v. N.Y. Shipping Ass'n., Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) (recognizing that the standard for a temporary restraining order is the same as preliminary injunction standard)). Irreparable harm is "[t]he "most significant condition which must be present to support the granting of a temporary injunction." *Capital City Gas Co. v. Phillips Petroleum Co.*, 373 F.2d 128, 131 (2d Cir. 1967); *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990) ("[T]he moving party must first demonstrate that [irreparable] injury is likely before the other requirements for the issuance of an injunction will be considered."). As with a request for preliminary injunctive relief, the moving party must show irreparable harm that is "not remote or speculative" but "actual and imminent." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979).

Finally, because there is a *pro se* party, that party's filings generally would be construed "liberally" and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (explaining that *pro se* litigants should be afforded "special solicitude" because they are not represented by counsel). But "a lawyer representing [oneself] ordinarily receives no such solicitude at all." *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010). In any event, any pleading must meet the "pleading standards otherwise prescribed by the Federal [R]ules of Civil Procedure" in order for the case to continue. *Suares v. Verizon Commc'ns Inc.*, C.A. No. 11-civ-5050 (LAP), 2012 WL 4571030, at *3 (S.D.N.Y. 2012) (internal quotation marks omitted).

### III.  DISCUSSION

#### A.  Irreparable Harm

"A showing of irreparable harm is 'the single most important prerequisite for the issuance of a preliminary injunction.'" *Faiveley Trans. Malmo AB v. Wabtec Corp.,* 559 F.3d 110, 118 (2d Cir. 2009) (quoting *Rodriguez v. DeBuono,* 175 F.3d 227, 234 (2d Cir. 1999)). For irreparable harm, a plaintiff must show an "injury that is neither remote nor speculative, but actual and imminent." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) *see also City of L.A. v. Lyons*, 461 U.S. 95, 111–12 (1983) (holding that a court cannot find injunctive relief if the claimed injury is speculative or remote).

> The relevant [irreparable] harm is the harm that (a) occurs to the parties' legal interests and (b) cannot be remedied after a final adjudication, whether by damages or a permanent injunction. . . . Harm might be irremediable, or irreparable, for many reasons, including that a loss is difficult to replace or difficult to measure, or that it is a loss that one should not be expected to suffer.

*Salinger v. Colting*, 607 F.3d 68, 81 (2d Cir. 2010).

Ms. Vincent argues that the harm to her is "actual and imminent, and currently suffered daily" because she is "deprived of **all access** to all government buildings and public spaces, indoor and out." Pl.'s Mem. at 7 (emphasis in original). To gain access to public spaces, Ms. Vincent contends that she would "need to engage in healthcare in contravention [of] her constitutional privacy and liberty interests and then freely share her protected information with random others in any public space where she seeks entry," or "wear a mask which she is unable to wear without serious physical, mental and emotional harm to herself." *Id.* at 7–8. Again, Ms. Vincent relies on her affidavit to support these assertions, as well as her testimony at the hearing. *Id.* at 7.

Defendants argue that Ms. Vincent failed to cite any legal authority to support her argument of irreparable harm. Defs.' Mem. at 13. Defendants argue that Ms. Vincent has not established that denials from government buildings are actual or imminent because she does not specify which government buildings she needs to visit and when she would need to visit them. *Id.* at 13–14. Defendants also point out that many government entities are conducting business remotely over videoconference or telephone. *Id.* at 14. Defendants further argue that Ms. Vincent also has not shown that she will be denied "service to complete personal business," noting that businesses, such as grocery stores, banks, and pharmacies provide drive-thru, delivery, and other contactless service options. *Id.* Finally, Defendants contend that "any harm that Plaintiff might suffer is not a result of the documentation requirement imposed by the [Executive] Order, but rather is a self-inflicted harm stemming from her personal beliefs about medicine and doctors." *Id.* at 15.

The Court agrees.

Ms. Vincent has not sufficiently demonstrated irreparable harm in her filings, or in her testimony at oral argument. She asserts that before the enactment of the Executive Order, when Executive Order 7BB was in effect, she was "harassed, questioned, intimidated, and evicted from various public places," Compl. ¶ 16, but she has not alleged having experienced any such treatment since the new Executive Order has been in effect. Simply showing "some possibility of irreparable injury fails to satisfy" the irreparable harm requirement. *Nken v. Holder,* 556 U.S. 418, 434 (2009).

Even if she had so alleged, Ms. Vincent has not shown that any such treatment constitutes irreparable harm. As Defendants point out, although Ms. Vincent may be barred from physically entering a public space without a face covering or documentation of her medical exception, she

has been able to conduct professional and personal business virtually or through the myriad of contactless options developed during the COVID-19 pandemic. *See Caruso Mgmt. Co. Ltd. v. Int'l Council of Shopping Ctrs.,* C.A. No. 18 CIV. 11932 (VM), 2019 WL 1949801, at *5 (S.D.N.Y. 2019) (finding the plaintiff "failed to sufficiently demonstrate irreparable harm" when the plaintiff did not "substantiate[] or provide[] context for the value" of being able to conduct business at a certain location); *see also id.* (recognizing that "reduced opportunities to conduct business at alternative locations does not translate into a finding of irreparable harm").

Indeed, Ms. Vincent testified to hiring a contract attorney to assist her legal practice by appearing in court on her clients' behalf. *See* Section I.B, *supra* (summarizing Ms. Vincent's testimony from the hearing on September 29, 2020). As a result, even if this may be less than optimal for her legal practice, Ms. Vincent has failed to establish irreparable harm. Moreover, however compelling her testimony is – and it is compelling – her testimony suffers from a fatal flaw: the absence of expert testimony to support it. Under the Federal Rules of Evidence, Ms. Vincent can offer opinions "rationally based on [her] perception," Fed. R. Evid. 701(a), and "helpful to clearly understanding [her] testimony or to determining a fact in issue," *id.* at 701(b). *See Village of Freeport v. Barrella,* 814 F.3d 594, 611 (2d Cir. 2016) ("Rule 701(b) helps to protect against the admission of opinions which would *merely tell the jury what result to reach*, rather than providing information that would assist the jury in drawing its own conclusions.") (internal citations and quotation marks omitted) (emphasis in original); *Cameron v. City of N.Y.,* 598 F.3d 50, 62 (2d Cir. 2010) ("Th[e] helpfulness requirement is designed to provide assurance against the admission of opinions which . . . would constitute an attempt to introduce meaningless assertions which amount to little more than choosing up sides.") (internal citations, quotation marks, and alterations omitted).

But her lay testimony cannot be "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701(c); *see also Cameron,* 598 F.3d at 62 n. 5 ("[A] lay witness'[s] testimony must be scrutinized under the rules regulating expert opinion to the extent that the witness is providing testimony based on scientific, technical, or other specialized knowledge.") (quoting Fed. R. Evid. 701, Advisory Committee's Note to 2010 amendment) (internal alteration omitted). And testimony about the extent of Ms. Vincent's medical condition and any effects of that condition on her ability to wear a mask or seek a medical opinion confirming her alleged disability to wear one is undeniably expert testimony. *See United States v. Flores*, 945 F.3d 687, 707 (2d Cir. 2019) ("Part (c) of Rule 701 is intended to prevent a party from conflating expert and lay opinion testimony [and] thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702 . . . .") (alteration in original); *cf. Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 268 (2d Cir. 2002) ("[T]o establish causation, [a plaintiff] must offer admissible expert testimony regarding both general causation . . . and specific causation . . . .") (citations omitted).

Put another way, while the Court does not and, on this record, has no basis to challenge Ms. Vincent's credibility – indeed, the Court finds her testimony to be credible – the Court cannot rule in her favor on threshold issues, such as irreparable harm, without expert testimony, as a matter of law. *See Shapiro v. Cadman Towers, Inc.,* 51 F.3d 328, 332–33 (2d Cir. 1995) (holding that the district court did not err in "rel[ying] . . . on the testimony given by [the plaintiff's] medical experts, including her treating physician" rather than lay testimony, to establish irreparable harm). In order to do so, this Court would have to conclude that there is sufficient evidence in this record confirming Ms. Vincent's self-described medical condition and

the associated limitations that condition places on her, but the record currently lacks this evidence.[3] *See United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir. 1992) ("When a witness has not identified the objective bases for [her] opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701 . . . because there is no way for the court to assess whether it is rationally based on the witness's perceptions . . . ") (citations omitted).

Accordingly, Ms. Vincent has failed to satisfy her burden with respect to demonstrating irreparable harm.

### B. Likelihood of Success on the Merits

Before issuing a preliminary injunction or temporary restraining order, "a district court must consider whether the plaintiffs have demonstrated that they are likely to prevail on the merits." *Ashcroft v. ACLU*, 542 U.S. 656, 666 (2004).

In her memorandum in support of her *ex parte* motion for a temporary restraining order, Ms. Vincent challenges the Executive Order as: (1) a deprivation of constitutional liberty; (2) a deprivation of privacy; (3) an unconstitutionally compelled choice; and (4) both arbitrary and capricious and a retaliation of political speech. Pl.'s Mem. Defendants contend that none of these challenges are likely to succeed on the merits.

First, Ms. Vincent "asserts that she is likely to prevail on her claim that she is being unlawfully deprived of her constitutional liberty." *Id.* at 15. Citing to several Supreme Court cases that discuss constitutional protections for liberty, Ms. Vincent argues that because she "is a citizen who has not been accused of crimes (nor accused of having COVID[-19]), nor found guilty of a crime or found to be ill," she "disputes that there is any reasonable basis to conclude

---

[3] In noting the absence of expert testimony in support of her claims, the Court acknowledges that this requirement creates a particular bind for Ms. Vincent, who has credibly testified being fearful of receiving medical attention, and therefore likely avoided seeking an expert to support her claim. But, as discussed above, expert testimony is essential to proving her claim as a matter of law.

that she poses any imminent danger to the public health . . . [and] disputes that carrying a note is a reasonable requirement to access her liberty." *Id.* at 16.

Defendants interpret Ms. Vincent's liberty claims to encompass a claim about the right to travel and a claim about the right to make medical choices. Defendants first argue that Ms. Vincent's "right to liberty, specifically her right to travel" is not violated because the right "protects movement between places and has no bearing on access to a particular place." Defs.' Mem. at 20-21 (quoting *Williams v. Town of Greenburgh,* 535 F. 3d. 71, 75 (2d. Cir. 2008)) (alterations omitted). Defendants also argue that the Executive Order's documentation requirement is a minor restriction that does not rise to the level of a denial of a fundamental right, *id.* at 22, and even if it did, the Executive Order is "narrowly tailored to ensure that those who are able to wear masks will not abuse the medical exemption and that as many people as possible will implement a strategy that public health officials agree is an effective way to limit the spread of COVID-19," *id.* at 23.

Defendants further argue that Ms. Vincent's liberty interest in making medical choices is not violated because the liberty "is not unrestricted license to act according to one's own will . . [i]t is only freedom from restraint under conditions essential to the equal enjoyment of the same rights by others." *Id.* at 25 (quoting *Jacobson v. Commonwealth of Mass.,* 197 U.S. 11, 26–27 (1905)). Defendants argue that Ms. Vincent's "liberty interest . . must give way to the real and substantial goal of protecting Connecticut residents from the effects of COVID-19 and maintaining the gains that have already been made." *Id.*

Second, Ms. Vincent "claims she is likely to prevail on her claim that she is being unlawfully deprived of her privacy." Pl.'s Mem. at 17. Ms. Vincent asserts that she has been "denied multiple aspects of her right to constitutionally protected privacy," namely "a right to

make her own decision[s] about whether she will or will not consult with any licensed professional or agency about her own health condition," "the fundamental right to keep all information about any such consultation entirely private," and "her general privacy right, the right to be let alone." *Id.* (internal quotation marks omitted). Ms. Vincent cites to Second Circuit caselaw discussing privacy protections for medical conditions and Supreme Court caselaw discussing privacy protections afforded to individuals' associations. *Id.* at 18–19.

Defendants argue that Ms. Vincent's right to privacy is not violated by the Executive Order because the Executive Order does not require the documentation to "name or describe the condition that qualifies the person for the exemption" and "the right to privacy in confidential medical information is not absolute." Defs.' Mem. at 27. Defendants assert that "[a]ny disclosure of confidential medical information is limited and necessary to address the 'weighty government purpose' of combating the COVID-19 pandemic." *Id.* (quoting *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 75 (2d. Cir. 2011)).

Third, Ms. Vincent "claims that she will prevail on her claim that she is being unlawfully forced to give up on constitutional right in order to exercise another." Pl.'s Mem. at 20. Because the Executive Order requires the wearing of a mask or a written exception from a healthcare professional, Ms. Vincent argues that she would have to "either give up her constitutional liberty to preserve her constitutional privacy, or alternately, choose the reverse and give up her constitutional privacy to gain her constitutional liberty." *Id.* Ms. Vincent contends that this choice implicates "the doctrine of 'unconstitutional conditions,'" which "prevents the government from 'producing a result which it could not command directly.'" *Id.* 20–21 (quoting *Perry v. Sindermann*, 408 U.S. 593, 597 (1972).

Defendants argue that Ms. Vincent "failed to establish a clear or substantial likelihood to

succeed on this [unconstitutional conditions] claim as she has not demonstrated that either a violation of her right to travel, her right to privacy or her liberty interest in making medical choices." Defs.' Mem. at 28.

Fourth and finally, Ms. Vincent "claims she will likely prevail on her claim that she is being deprived of her rights based on a law that is arbitrary and capricious." Pl.'s Mem. at 22. She argues that "[t]he government has not asserted that the public health requires the use of masks by persons who are unable to safely wear them" without a documentation because the public safety is not said to be compromised when persons who are unable to safely wear them do so with documentation. *Id.* at 24. She further claims that "the implementation of [the Executive Order] was retaliatory in direct relation to political speech that she personally participated in, and is intended to prevent herself and other citizens from exercising their freedom of speech in the future." *Id.* at 25.

Defendants recognize this claim as a substantive due process claim and argue that the Executive Order is not arbitrary or unreasonable. Defs.' Mem. at 20, 29–30. Defendants argue that under *Jacobson,* the Executive Order has a real and substantial relationship to maintaining the health and safety of Connecticut residents. *Id.* at 17. Defendants argue that Covid-19 is the type of "public health crisis . . . contemplated by the *Jacobson* Court" and that the Executive Order would allow the Defendants to "maintain the gains that have already been made in containing the spread of COVID-19 in Connecticut." *Id.* at 18–19 (internal quotation mark omitted). As to retaliation, Defendants argue that Ms. Vincent's assertion regarding the connection between her attendance at a political rally and the issuance of the Executive Order is too intangible to establish a First Amendment retaliation claim. *Id.* at 34.

Because Ms. Vincent has failed to demonstrate irreparable harm, the Court need not

address whether any of her claims are likely to succeed on the merits.

In any event, Ms. Vincent has not demonstrated a likelihood to succeed on the merits. As a preliminary matter, there is nothing in her filings or her testimony suggesting that either the Governor or the Lieutenant Governor went "so far beyond what was reasonably required for the safety of the public, as to authorize or compel the courts to interfere for the protection of such persons." *Jacobson*, 197 U.S. at 28.

As for her claimed right to travel, Defendants rightly point out that this constitutional right "protects *movement between places* and has no bearing on *access* to a particular place." *Williams*, 535 F.3d at 75 (emphasis in original). As a result, "it would distort the right to free travel beyond recognition to construe it as providing a substantive right to cross a *particular* parcel of land, enter a *chosen* dwelling, or gain admittance to a *specific* government building." *Id.* at 76. (emphases in original). And "minor restrictions on travel simply do not amount to the denial of a fundamental right." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 101.

The Executive Order does not prevent Ms. Vincent from going to any place within Connecticut. It merely places limits on what she can do once she arrives anywhere in this state: she must wear a mask or have available medical documentation, approving of her not wearing mask. There is nothing in this record to suggest this "minor restriction" overall—although a significant restriction to her personally—violates the constitutional right to travel.[4]

As to her alleged liberty interest, Defendants again rightly note the applicability of the Supreme Court's long-established precedent in *Jacobson* that:

> [I]n every well-ordered society charged with the duty of conserving the safety of its members[,] the rights of the individual in respect of

---

[4] Again, as noted above, the absence of expert testimony in support of Ms. Vincent's alleged medical condition precludes the Court from crediting her alleged limitations in support of this claim, notwithstanding her testimony's credibility.

> his liberty may at times, under the pressure of great dangers, be
> subjected to such restraint, to be enforced by reasonable regulations,
> as the safety of the general public may demand.

*Jacobson*, 197 U.S. at 29. Ms. Vincent, however, has failed to demonstrate how the Defendants'

actions here have not struck the proper balance, and her testimony uncorroborated by medical

evidence, again while compelling, is insufficient.

As to her alleged privacy interest, there is nothing in this record to support the notion that

the Executive Order would require Ms. Vincent to disclose confidential medical information. *See*

Defs.' Mem. at 27 ("While the documentation the [Executive] Order requires must state that a

person 'is qualified for the exemption,' the Order also explicitly states that '[s]uch

documentation need not name or describe the condition that qualifies the person for the

exemption.'"). As a result, Ms. Vincent cannot show a likelihood of success on the merits on this

claim.[5]

Finally, Ms. Vincent cannot show a likelihood of success on the merits for her First

Amendment retaliation claim. The record evidence is clear that the Executive Order has been

part of concerted and successive efforts to address this current pandemic. *See* Conn. Exec. Order

No. 7NNN (Aug. 14, 2020) (noting that the Executive Order is one of "sixty-five (65) executive

orders to suspend or modify statutes and to take other actions necessary to protect public health

and safety and to mitigate the effects of the COVID-19 pandemic"); *id.* (noting that "to reduce

the spread of COVID-19, the United States Centers for Disease Control and Prevention (CDC)

and the Connecticut Department of Public Health (DPH) recommend implementation of

community mitigation strategies to slow transmission of COVID-19, including cancellation of

---

[5] For similar reasons, as well as for reasons stated with respect to her right to travel claim, Ms. Vincent has failed to demonstrate a likelihood of success on the merits of her unconstitutional conditions claim and substantive due process claim, both of which appear to be derivative of these other failed claims.

gatherings of ten people or more and social distancing in smaller gatherings"); *id.* (noting that "in recognition of the effectiveness of using masks or face coverings in preventing the transmission of COVID-19, Executive Order 7BB, Section 2 required the use of a mask or face covering by anyone in a public place who does not maintain a safe distance of six feet from other people, but did not require documentation of any kind if a person claimed a medical condition prevented them from wearing a mask or face covering"); *id.* (noting that "public health and municipal officials have reported that some people who refuse to wear a mask have done [*sic*] have falsely claimed a medical reason for doing so, and that some organizations philosophically opposed to these scientifically proven public health protections have urged their members or those attending protests to claim a medical exemption because Executive Order No. 7BB does not require documentation").

While Ms. Vincent argues that the Executive Order instead is directed at the political views of hers and others, there is nothing in this record to suggest that anything other than legitimate public health considerations motivated the Executive Order. Put another way, Ms. Vincent has not demonstrated that there were no legitimate public health considerations motivating this Executive Order, or that the public health considerations for the Executive Order identified by the Defendants were merely a pretext in retaliation for the exercise of First Amendment rights. *Cf. Village of Freeport*, 814 F.3d at 611 ("Although witnesses may testify regarding their own observations of the defendant's interactions with the plaintiff or with other employees, they may not opine as to the motives, racial or otherwise, underlying those interactions.") (internal quotation marks omitted). And, as discussed above, her lay testimony regarding medical matters requiring expert testimony are insufficient as a matter of law. *See, e.g.*, *Flores*, 945 F.3d at 707 ("Lay opinion under Rule 701 must be limited to opinions that

result[ ] from a process of reasoning familiar in everyday life.") (citations and internal quotation marks omitted) (alteration in original).

As a result, on this record, Ms. Vincent cannot show a likelihood of success on the merits for her First Amendment retaliation claim. *See Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) ("To plead a First Amendment retaliation claim[,] a plaintiff must show: (1) [s]he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [plaintiff's] exercise of that right; and (3) the defendant's actions caused [the plaintiff] some injury.") (citations and internal quotation marks omitted) (second alteration in original).

Accordingly, Ms. Vincent has not satisfied her burden with respect to demonstrating a substantial likelihood of success on the merits on any of her claims.

### C. Balance of Equities and the Public Interest

The Court finally "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Vill. of Gambell, AK,* 480 U.S. 531, 542 (1987)). "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Weinberger v. Romero–Barcelo,* 456 U.S. 305, 312 (1982). These "final two factors—the balance of the equities and the public interest— merge when, as in this case, the Government is the opposing party." *Amato*, C.A. No. 3:20-cv-464 (MPS), 2020 WL 2542788, at *3 (D. Conn. May 19, 2020) (citing *Nken*, 556 U.S. at 435).

Again, the Court need not address the remaining factors for issuing a preliminary injunction. But, given the nature of this pandemic, the balance of the equities and the public interest favor denying a preliminary injunction. *See, e.g.*, *Amato*, 2020 WL 2542788, at *7

(declining to "reach the public interest in a temporary restraining order against [one of Governor Lamont's Executive Orders issued during COVID-19] or the balance of equities" because "the [p]laintiffs have not established standing or irreparable harm" related to the alleged "violat[ion] [of] their constitutional 'right to earn an honest living'"); *TJM 64, Inc. v. Harris*, C.A. No. 2:20-cv-20498-JPM-tmp, 2020 WL 4352756, at *8 (W.D. Tenn. July 29, 2020) (recognizing "the burden that the [COVID-19] Closure Order places on Plaintiffs' businesses," but finding that "the issuance of a TRO preventing the enforcement of the COVID-19 Closure Order is not appropriate" given "the potential public health consequences of allowing Plaintiffs to continue to operate their businesses unfettered by Shelby County Government public safety and health regulations").

There is nothing in this record to suggest that the efforts of Governor Lamont and Lieutenant Governor Bysiewicz thus far should be second-guessed, much less stayed. *See Jacobson*, 197 U.S. at 38 ("The safety and the health of the people of [the state] are, in the first instance, for that [state] to guard and protect."); *see also South Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) ("Our Constitution principally entrusts '[t]he safety and the health of the people' to the politically accountable officials of the States 'to guard and protect.'" (quoting *Jacobson*, 197 U.S. at 38) (alteration in original)). The balance of equities thus do not favor granting a preliminary injunction.

While this pandemic may have adversely affected Ms. Vincent, she has failed to satisfy the standards necessary for obtaining a temporary restraining order or a preliminary injunction as a matter of law.

Accordingly, having weighed all of the relevant factors, the Court denies her request for a preliminary injunction.

## IV.     CONCLUSION

For the reasons explained above, Plaintiffs' request for a preliminary injunction is

**DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 16th day of October, 2020.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge